## Burns *v.* Reynoldsville Borough, Appellant.

*Road law—Change of grade—Damages—Act of May 24, 1878, P. L. 129.*

1. Where a borough has graded and paved and curbed the cartway of a street, leaving the sidewalk unchanged, and a property owner has instituted proceedings under the act of May 24, 1878, to assess damages to his property, resulting from the change of grade, the amount of the recovery is to be determined by the depreciation, resulting from the grading, in the market value of the owner's entire property considered as a whole, and not by the effect upon a mere fraction of the lot, such for instance, as the reduction of the grade of the cartway immediately in front of the entrance to a livery stable on the lot.

2. When a lot is situated above or below the grade of an adjoining street and the municipality lowers or raises the grade of such street, leaving the lot above or below the new grade as it was with regard to the old, and merely adding to the previously existing elevation or depression of the lot, the fact of such additional elevation or depression, as affecting the value of the property after the change, may be shown, but not the specific cost of changing the whole surface of the property by cutting it down or lifting it up to the new grade.

3. In a proceeding by a property owner under the Act of May 24, 1878, P. L. 129, to secure damages for injuries resulting to his property from the change of grade of a cartway of a street abutting on his land, the jury must take into consideration the advantages accruing to the property by reason of the fact that it directly abutted upon the improvement.

4. Whether a property owner may be entitled to compensation for the detention of payment of any damages to which he may be entitled in a road proceeding, depends upon whether such detention has been caused by his grossly excessive and unreasonable demands, which it was the duty of the officers of the municipality to resist, or was the result of the improper action of the municipality.

Argued May 1, 1911. Appeal, No. 28, April T., 1910, by defendant, from judgment of C. P. Jefferson Co., Aug. Term, 1906, No. 165, on verdict for plaintiff in case of Edward C. Burns v. Reynoldsville Borough. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Reversed.

Appeal from award of jury of view. Before SAVIDGE, P. J., specially presiding.

The facts are stated in the opinion of the Superior Court.

At the trial when E. T. McGraw, a witness for the defendant was on the stand, he was asked this question:

"Q. What effect did the improvement made by the borough of Reynoldsville in 1903 have on the market value of Mr. Burns' property?"

Mr. Cole: Objected to as incompetent and immaterial, because there is a part of this improvement that Mr. Burns paid for, and it is not right or legal to have it charged back to him again. This pavement was made by a contract between the borough and the property owners, and the property owners were assessed at the basis agreed upon and they paid it, a one-third basis on each side, and the borough paying one-third. If that is to be charged back to them again, they would be paying it twice.

The Court: A street is to be improved and one man on that street is especially injured by reason of that cut. We will say for illustration, that it affects no one else on the street. His property is benefited along with all other properties along the street and off the street, and he is benefited along with all other people in the town, especially those who are using that street; and many of those who are not living on the street because they are using it more. It does not seem to me that it is right that the property owners should be charged up with a benefit that is not only a benefit common to all the people living on that particular street, but to the general public as well, and on a property and an improvement, he not only helps to create himself by paying one-third of the actual cost, but in addition paying his taxes towards that part of the improvement assumed by the borough, and then continuing to pay his taxes for improvements that are going to be made elsewhere about the borough.

The objection is sustained and the testimony excluded, and, at the request of its counsel, a bill of exceptions is sealed to the defendant. [3]

Defendant presented these points:

1. If the jury believe from the evidence that every property along that portion of Fourth street which was graded was made more accessible by reason of the grading, then every property along said graded street was especially benefited and the amount of that benefit should be set off against the damages, if any, inflicted by the improvement as made. *Answer:* There are two points of law presented both of which, under the view I take of this case, are refused. [4]

2. If the grading and other improvement made by the defendant borough on Fourth street increased the value of the plaintiff's property as much as or more than the cost to him to repair it, or to adjust himself to the changed state of things, he is not damaged and should not recover. *Answer:* By the court: There are two points of law presented, both of which, under the view I take of this. case, are refused. [5]

[The court erred in instructing the jury in the general charge in part as follows: "Now, any benefits and advantages which were brought about by this improvement by the paving of this street, Mr. Burns is entitled to as well as any other residents along that street. Undoubtedly an improvement such as this, as I said before is a benefit to every owner of property abutting along the street improved; and so far as general benefits are concerned, or such benefits are common to all the residents along the street, they are not to be taken into account and charged up against him as an offset to any damage which he may have sustained by reason of the change of grade. But if there was any special benefit derived by Mr. Burns through the paving of this street, any special advantage—some advantage that was peculiar to his property and that was not enjoyed or might not have been enjoyed by other properties along the street—such special advantage might be and should be set off against any damages which may have been occasioned him by reason of the change of grade.] [6]

[The court erred in instructing the jury in the general charge in part as follows: "The defendant contends that this property was most advantageously located for livery purposes; that it had been used for that purpose for a number of years; that the buildings had been put there for that purpose; and that because of its special adaptation to that purpose, this improvement, this paving, gave special advantages. They point to the fact that the street was at all times dry, free from water, free from mud, free from dirt, and that it was a common practice for Mr. Burns to use the street in front of his property for hitching and unhitching, and they say that he left his wagons, teams and vehicles, stand there in front of the building and made use of the street at all times for his accommodation in that way. Now, I say to you that I do not believe that that accorded any special advantage in the law to Mr. Burns, because he had no right to make use of this street for the purpose of storing vehicles. And while it is a common practice to hitch and unhitch in front of a livery stable, yet it is common too, to hitch and unhitch and the same privileges may be enjoyed in front of any other property. And one of the usual and ordinary and expected advantages to be gained by all property owners in a dry street, freedom from all dust, dirt, and all that sort of thing; that is one of the ordinary advantages to be gained by all by the improvement of such a street. And I cannot see that you can charge it up against Mr. Burns, under the evidence in this case, as any special advantage that he derived over and above anybody else by reason of the paving of this street.] [7]

[The court erred in instructing the jury in the general charge as follows: "If you find any amount in favor of Mr. Burns, the plaintiff, on whatever amount you may find in his favor, you would not be entitled to add interest as such; but you would be entitled to give him whatever you think he ought to have because of the delay in payment to him, or the retention of the amount that he ought to have been paid at the time the injuries were suffered by

him.   And it is sometimes considered that it is not unjust to allow what would be practically the equivalent to interest on the money.   Although the appellate courts say you may not allow interest as such, yet what they do say is that you may allow that which is practically equivalent to interest.   If you find that he is entitled to any sum, you may add to it if you think that would be right, whatever you conclude he ought to have because of the delay for three or four years in payment."] [8]

Verdict and judgment for plaintiff for $400.   Defendant appealed.

*Errors assigned* were (3) ruling on evidence quoting the bill of exceptions and (4–8) above instructions, quoting them.

*C. Z. Gordon,* with him *Clement W. Flynn,* for appellant.—If every property along that part of Fourth street which was improved was made more accessible, then every property was especially benefited and the amount of the benefit should be set off against the damages, if any, inflicted by the improvement as made: Aswell v. Scranton, 175 Pa. 173; Setzler v. Railroad Co., 112 Pa. 56.

Testimony of a witness as to damages caused by a change of grade based upon the cost of bringing the property to the new grade is incompetent and should be stricken out: Bond v. Philadelphia, 218 Pa. 475; Mead v. Pittsburg, 194 Pa. 392; Edsall v. Jersey Shore Borough, 220 Pa. 591.

Compensation for deferred payments in torts depends upon the circumstances of each case: Phila. Ball Club v. Philadelphia, 192 Pa. 632; Shevalier v. Postal Telegraph Co., 22 Pa. Superior Ct. 506; Richards v. Citizens Nat. Gas Co., 130 Pa. 37.

*Edward A. Carmalt,* of *Carmalt & Strong,* with him *A. L. Cole,* for appellee.

OPINION BY PORTER, J., October 9, 1911:

This proceeding originated in a petition by the plaintiff

for the appointment of viewers, under the Act of May 24, 1878, P. L. 129, to assess the damages to his property alleged to have resulted from a change in the grade of Fourth street, in the borough of Reynoldsville, upon which said property abutted. The viewers having been appointed made a report awarding damages to the plaintiff, and from that report the borough appealed. The jury trial upon that appeal resulted in a verdict and judgment in favor of the plaintiff, from which we have this appeal. Counsel for the borough, at the trial in the court below, made an oral admission that whatever change had been made in the grade of the street was made under the authority of the borough council. But the ordinance in pursuance of which the work was done was not offered in evidence. Under an agreement of counsel representing both parties, the printing of the petition for the appointment of viewers, the ordinance authorizing the paving of the street and the other documents out of which this issue arose have been omitted from the paper-book of the appellant. This leaves us entirely in the dark as to whether, in grading and paving the street in question, the borough proceeded under the provisions of the Act of April 23, 1889, P. L. 44, and the Act of May 19, 1897, P. L. 79, or exercised the authority conferred by the Act of May 16, 1891, P. L. 75. The case as here presented only shows that the borough had graded, paved and curbed the cartway of the street, leaving the sidewalk unchanged, and that the plaintiff had elected to have the question of the damage to his property, if any, resulting from the change of grade determined in this separate and distinct proceeding, under the provisions of the act of 1878.

The property of the plaintiff alleged to have been damaged consists of a lot at the corner of Grant and Fourth streets, fronting sixty feet on the former street and extending back along Fourth street 150 feet. On the Grant street front of the lot there was erected a dwelling house and on the rear, fronting on Fourth street, a livery stable. The borough, in 1903, graded, paved and curbed the

cartway of Fourth street. The grading resulted in changes of only a few inches from what had formerly been the natural surface of the cartway of the street, the new grade being a few inches lower than the old upon that part of the street opposite the rear part of plaintiff's property, where the livery stable fronted upon the street, and the street opposite the other portions of plaintiff's property was paved at substantially the old grade, some parts thereof being raised a few inches. The plaintiff contended at the trial that his property was injured by the reduction of the grade of the cartway of the street in front of the entrance to his livery stable; that was the only element of damage to the property which he attempted to establish by evidence. The evidence clearly established that the livery stable always had been above the grade of the old sidewalk and, also, that the sidewalk had been higher than the grade of the old cartway. The only effect of the grading of the cartway upon the part of plaintiff's lot on which the livery stable stood was to add a few inches to the height at which it had always stood above the grade. If the plaintiff was entitled to recover in this proceeding, the amount of his recovery was to be determined by the depreciation, resulting from the grading, in the market value of his entire property, considered as a whole, and not by the effect upon a mere fraction of the lot. The plaintiff was called as a witness in his own behalf and, while he testified that his property was damaged by the grading, his entire testimony clearly revealed that his estimate was not based on the market value of the property considered as a whole, but that it was founded entirely upon the specific cost of changing the whole surface of that part of the property on which the livery stable stood, taking out the plank flooring, removing the earth to the new level of the street, and substituting a pavement for the floor, thus producing a condition which never had existed. His testimony clearly disclosed that the livery stable always had stood upon ground which was higher than the street and that the only effect of the grading, as

to that part of the property, was to add a few inches to the previously existing elevation above the street. When a lot is situated above or below the grade of an adjoining street and the municipality lowers or raises the grade of such street, leaving the lot above or below the new grade, as it was with regard to the old, and merely adding to the previously existing elevation or depression of the lot, the fact of such additional elevation or depression, as affecting the value of the property after the change, may be shown, but not the specific cost of changing the whole surface of the property by cutting it down or lifting it up to the new grade: Mead v. Pittsburg, 194 Pa. 392; Bond v. Philadelphia, 218 Pa. 475; Edsall v. Jersey Shore Borough, 220 Pa. 591. The testimony of the plaintiff having revealed that his estimate of the damage to his property was based upon this false foundation, the motion of the defendant to strike out his testimony ought to have prevailed, and the first specification of error is sustained.

The borough was not in this case attempting to impose an assessment for special benefits, resulting from the grade of the street, upon the property of the plaintiff. The latter was the actor and was seeking to recover from the borough damages for injuries which he asserted his property had sustained. There had been in this case no taking of plaintiff's property. The injury, if any, was purely consequential. If the plaintiff was entitled to recover, the actual loss which he had suffered was the measure of the compensation to which he was entitled. The amount of that loss could only be determined by considering the effect of the change of grade upon the property, as well the advantages as the disadvantages therefrom resulting. The fact must not be lost sight of, that in this case the plaintiff has elected to proceed under the act of 1878, and to have the question between him and the borough determined in a distinct proceeding, from which all other parties are excluded. No property benefited can be assessed to pay damages which this plaintiff alleges he has sustained. The loss which this plaintiff

has sustained, if any, may be measured with exact justice by the depreciation in the value of his property resulting from the improvement. The learned judge of the court below seems to have recognized the principle that in estimating the damage sustained by plaintiff it was proper to consider the benefits which accrued to the property from the improvement upon which it directly abutted, but fell into error in the application of the principle, when he charged the jury as follows: "Undoubtedly an improvement such as this, as I said before, is a benefit to every owner of property abutting upon the street improved; and so far as general benefits are concerned, or such benefits as are common to all the residents along the street, they are not to be taken into account and charged up against him as an offset to any damage which he may have sustained by reason of the change of grade. But if there was any special benefit derived by Mr. Burns through the paving of this street, any special advantage—some advantage that was peculiar to his property and that was not enjoyed or might not have been enjoyed by other persons along the street—such special advantages might be and should be set off against any damages which may have been occasioned him by reason of the change of grade." And in the conclusion of that portion of the charge which is the subject of the seventh specification of error, the learned judge said, after reviewing the evidence at length: "And I cannot see that you can charge it up against Mr. Burns, under the evidence in this case, as any special advantage that he derived over and above anybody else by reason of the paving of this street." This practically withdrew from the jury the consideration of any question of the advantages accruing to the plaintiff's property by reason of the fact that it directly abutted upon the improvement. The view which the learned judge manifestly impressed upon the jury was that the benefits to the property which they were authorized to consider were such as accrued to that property alone, and did not accrue to any other property

abutting upon the improvement. The defendant submitted a written request for instructions to the jury: "If the grading and other improvement made by the defendant borough on Fourth street increased the value of the plaintiff's property as much as or more than the cost to him to repair it, or to adjust himself to the changed state of things, he is not damaged and should not recover," which point the court refused. These instructions were clearly erroneous and, in disposing of the specifications of error which refer to them, we find the language of the Supreme Court in Aswell v. Scranton, 175 Pa. 173, peculiarly appropriate. "The effect of the charge was to open the way for the jury to reach a conclusion that we uniformly said they must not adopt, viz: that the advantage derived from an improvement to justify the jury in considering it must be something unlike and above the advantages derived by any other person. The last case upon this subject, as I now recollect, is Mahaffey v. Beech Creek R. R. Co., 163 Pa. 158, in which our Brother FELL, delivering the opinion of the court, said: 'The plaintiff's property was not the only property taken, and presumably not the only property which received special advantages. Against the demand of each claimant it was for the jury to consider the advantages special to his property.' So it may be well said as to this improvement on Tenth street. The plaintiff's was not the only property affected. Each piece of property along the two squares over which the grade was established, and the street made, was probably made more accessible and more valuable. The amount of benefit conferred was dependent on the extent to which access to the property had been improved, but against the demand of each claimant for damages were to be put the advantages special to his property in improved accessibility or otherwise. If every property along the street was made more accessible, then every property along the street was specially benefited, and the amount of that benefit should be set off against the damages, if any, inflicted by the improvement as

made.  It is the actual loss suffered for which the lot owner should be compensated.  That loss may be measured with exact justice by the depreciation in value of his property resulting from the improvement complained of. If his property is injured that others may be benefited, his loss should be made good; but if the grading or other improvement increases the value of his property as much as or more than it may cost him to repair, or to adjust himself to the changed state of things, he is not a loser and ought not to recover."  The fourth, fifth, sixth and seventh specifications of error are sustained.  The theory upon which the learned judge of the court below tried the cause led him to exclude an offer of evidence by the borough to show the effect of the improvement upon the market value of the property, not upon the ground of the incompetency of the witness, but that the evidence was inadmissible.  This testimony ought to have been admitted and the third specification of error is sustained.

Whether the plaintiff was entitled to compensation for the detention of payment of any damages to which he might be entitled depended upon whether that detention was caused by his grossly excessive and unreasonable demands, which it was the duty of the officers of the borough to resist, or was the result of the improper action of the borough: Philadelphia Ball Club v. Philadelphia, 192 Pa. 632.  The eighth specification of error is sustained.

The judgment is reversed and a new venire awarded.