## McRoberts *v.* Borough of Castle Shannon, Appellant.

Argued November 1, 1934.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*Samuel A. Schreiner,* for appellant.

*Harry M. Irons,* and with him *Walter W. Riehl,* for appellee.

OPINION BY KELLER, J., March 1, 1935:

The proceeding in the court below was an appeal from a report of viewers assessing benefits and damages arising from the grading, paving and curbing and establishing the grade of Home Avenue in the Borough of Castle Shannon, pursuant to ordinances duly enacted.

Two matters are assigned for error on this appeal.

(1) Home Avenue was laid out along a hill. To construct and grade it of the width of fifty feet it was necessary to make a deep cut on the side of the street owned by the plaintiff and a corresponding fill on the opposite side, which was not owned by him.

The trial judge affirmed the Borough's fourth point, as follows: "In determining the effect of the change of grade upon Plaintiff's property, the jury should consider the change of grade throughout the entire width of the improvement in front of Plaintiff's property."

It now complains because in discussing with the jury the testimony of the borough engineer, the trial judge said in his charge: "He said that was the cut actually made in the center line of the street, and then he gave you measurements as to the difference in the lay of that street at the terminal sites, the edges of the defined fifty foot street as covered by the improve-

ment ordinance in question. I think we are not much concerned with what happened at the opposite side of the street. What happened in front of Mr. McRobert's property on his side of the street, is, of course, possibly a vital thing to you," and contends that this is contrary to what was ruled by the Supreme Court in Ebberts v. Edgewood Borough, 243 Pa. 595, 90 A. 334, on which the fourth point of the defendant was based.

There was no inconsistency. The trial judge, in this excerpt from the charge, was not talking about the condition of the improved street itself, but the condition of the property abutting the street on the opposite side, and with that the jury were not much, if at all, concerned in this case.

In the Ebberts case, the court below allowed counsel for the plaintiff—the property owner—to ask a witness, "How far did the grade there leave that property, that lot [of plaintiff], below the street, at the street line of the property?" Counsel for the Borough objected and contended that "the question as to the amount of the change of grade should be confined solely to the center line of the street." The court below said, "The question is not what was the changed condition in any part of the street, but what was the changed condition of the street throughout its whole width, and how did that changed condition affect the market value of the plaintiff's property." The Supreme Court affirmed this, as well as the admission of the evidence objected to. It is in entire consonance and harmony with the lower court's instructions in this case.

The first assignment of error is overruled.

(2) The jury returned the following verdict: "And now, to wit: October 6, 1933, we the Jurors empanelled in the above entitled case, find a verdict of $1,600 plus detention fees of $288 or a total of $1,888 in favor of the Plaintiff, *also that the plaintiff is to pay the cost*

*of Grading, Paving and Curbing the street.*"[1] What follows is taken from the opinion of the lower court. "When the verdict was read in open court the jury was properly instructed that the recital in the verdict that the plaintiff must pay the cost of grading, paving and curbing the street, could not be made operative against the plaintiff, and if the jury intended that the recited award of Eighteen Hundred and Eighty-eight Dollars should, for any reason be reduced, that the jury itself must make the reduction and recite the precise award which the plaintiff should receive. Without separating after returning the verdict, the jury again retired, and shortly returned with the verdict received as: '$1,600 plus detention fees of $288, or a total of $1,888 in favor of the Plaintiff.' The remaining recital in the original form of the verdict was lined out, as the apparent unanimous action of the members of the jury. Sometime thereafter, Juror A. J. Schuster, of 22 Gregory Street, South Side, Pittsburgh, Pennsylvania, came to the trial judge, and advised [him] that he was worried because he did not believe the jury had properly performed its duty upon its return to the jury room after presentation of the verdict in its original form. He made the definite statement that practically as soon as he entered the jury room, the foreman was drawing a line through the above recited words of the original verdict. This juror assured the trial judge that the jury did not again deliberate as to whether or not the originally determined award in the total amount of Eighteen Hundred Eighty-eight Dollars should be reduced, in the light of the jury's first recited decision that the plaintiff should pay the cost of grading, paving and curbing the street in question. This juror stated that his failure to insist upon consideration of the question as to whether or not the original award of Eighteen

[1] Words in italics were lined out when verdict was returned the second time.

Hundred and Eighty-eight Dollars should be some-what reduced, was the cause of his conscientious worriment. This unusual situation was called to the attention of counsel for both parties by the court, and we believe counsel made some effort to agree upon a reduction of the verdict. From the testimony, it was the united opinion of court and counsel that plaintiff's award should be reduced in the sum of Six Hundred Dollars. Defendant's counsel, however, has informed the court that the council of defendant borough will not consent to settlement of this suit on the basis of a reduction of Six Hundred Dollars from the total amount of the verdict. As a matter of judicial conscience, we believe the plaintiff's award should be reduced in the amount of Six Hundred Dollars, accepting the aforesaid statements of the juror in question as correct. Accordingly, while not disposed to go behind verdicts apparently properly found and properly recorded, nevertheless, having this matter placed upon our judicial conscience by the juror in question, we will direct that in the event the plaintiff accepts the sum of Twelve Hundred and Eighty-eight Dollars in full settlement of his claim against defendant borough, a new trial will be refused, otherwise a new trial will be granted.'' It will be noted that the court did not 'mold the verdict' at all, as assigned for error. It sent the jury back to correct it and received and recorded the corrected verdict.

The plaintiff accepted the proposed reduction of the verdict, and filed a remittitur of all in excess of $1,288, and judgment was entered accordingly.

The lower court being satisfied, as it was, that no error had been committed on the trial, and that the verdict, *as recorded,* was not excessive—it was less than one-half the amount testified to by plaintiff's real estate experts—might have allowed it to stand as received and entered of record. The defendant bor-

ough, certainly, was not harmed by the action of the court approving a reduction of the verdict. The court was not *obliged* to grant a new trial because of the statement of the Juror Schuster. A verdict would be an insecure and unsatisfactory determination of a law suit if, after being assented to by all the jurors in open court, it must be set aside because one of them subsequently feels a qualm or has a change of heart. We find no abuse of discretion in the action of the court.

The second and third assignments of error are overruled.

The judgment is affirmed.