## Susanna Root's Case.

1. Compensation for property taken under eminent domain, is not necessarily to be in money; it may be in particular benefits received by the owner; benefits in which all others participate equally with the owner are not just compensation.

2. The Act of March 26th 1867, enacted that in assessing damages for property taken for Fairmount Park, the title to which being extinguished and vested in the city, the viewers should estimate the advantage to the property adjoining or in the vicinity " to be enforced," &c. The Act of June 15th 1871, enacted that in appropriating land for public use, other than roads, streets and highways, the damages to such land should not be charged, &c., " to the other property adjoining or in the vicinity, nor the owners thereof." *Held*, that damages for land taken could not be charged to other land of the same owner of which that taken was a part.

3. The fact that the land taken and that against which the damages were charged were one tract of the same owner, did not vary it from the case of land belonging to a different owner from that taken.

January 7th 1875. Before Agnew, C. J., Sharswood, Williams, Mercur, Gordon, Paxson and Woodward, JJ.

Certiorari to the Court of Quarter Sessions of *Philadelphia:* No. 43, to January Term 1873. In the matter of the assessment of damages to Susanna Root for land taken for the Fairmount Park, Philadelphia.

On the 8th of March 1869, the Fairmount Park Commissioners presented their petition to the Court of Quarter Sessions of Philadelphia, for the appointment of viewers to assess to Susanna Root damages, by reason of their having taken land belonging to her for the park, under the Act of March 26th 1867, Pamph. L. 547.

By that act an area of ground in the city of Philadelphia, particularly described in the act, was vested in the city, to be laid out and maintained for ever as an open public park, and the act author-

[Susanna Root's Case.]

ized the appointment of commissioners of the park. On petition of the commissioners the Court of Quarter Sessions was required to appoint viewers to ascertain the value of land taken for the park, when the commissioners could not agree with the owners and in assessing the damages ; the viewers were to " estimate the advantage to property adjoining or in the vicinity, the award to be enforced as in opening of roads in Philadelphia.

The court appointed viewers accordingly.

The viewers reported that Mrs. Root's land taken for the park contained 2.9-10th acres ; they further reported :—

" It appeared before them that the premises above described are part of a larger tract of land, containing 12.8-10th of an acre ; of which larger tract the following described remain outside the park, and adjoining the same, to wit :—

" All that certain tract of land, with the buildings and improvements thereon erected, situate, &c., containing 9 acres more or less. After full advisement and consideration they find the value of the ground taken for Fairmount Park, as first herein described, to be $7000. They do also determine that the tract of land last herein described is benefited by the opening of said park to the amount of $13,000. They do therefore assess the premises last above described, for the benefit and advantage of opening said park, to the said amount of $13,000. And they do determine that the said Susanna Root shall pay the difference between the said sums, to wit, $6000 of the damages awarded by the undersigned, jurors, in their partial reports heretofore submitted to and confirmed by this court," &c.

On the 15th of June 1871, an Act of Assembly was passed, (Pamph. L. 392) enacting, " that in all cases of the appropriation of land for public use other than for roads, streets or highways, it shall not be lawful to assess, apportion or charge the whole or any portion of the damage done to or value of the land so appropriated, to, among or against the other property adjoining or in the vicinity of the land so appropriated nor the owners thereof; and all acts or parts of acts, inconsistent herewith, are hereby repealed."

Exceptions were filed by Mrs. Root to this report, as follows :—

Susanna Root, claiming the benefit of the said report, so far as it assesses at $7000 the damages to her for the taking of her parcel of land, containing two acres and nine-tenths of an acre, excepts to and prays the court to reject so much of the said report as claims to charge the sum of $13,000 on the tract or parcel of land lying outside of the boundaries of the said Fairmount Park, containing about nine acres, more or less, for the following reasons :—

1. Because the power of the jury to make the said charge of $13,000, on the last-mentioned tract, was taken away by

[Susanna Root's Case.]

the Act of Assembly of this Commonwealth, approved 15th June 1871.

2. Because the jury fulfilled all the duty imposed on them when they assessed the damages for the first-described lot of land, included within the park boundaries; and the residue of their finding, in respect to the lot lying outside the park, is surplusage and beyond their authority, and should be rejected.

December 2d 1871, exceptions sustained and the report referred back to the jury.

The viewers again reported : * * *

" That after further and full advisement and consideration, taking into consideration as well the value of the piece of ground taken, as the value and advantage of the park to the piece of ground left outside and adjoining the park, they find that the said Susanna Root has sustained no damage."

Mrs. Root filed exceptions to this report, amongst others the following :—

3. Because the jury have assumed to set off the value of the land taken, which in their original report they fixed at $7000, from the supposed advantage accruing by reason of the park, to another parcel of land which no longer bounds on the park, but is separated therefrom by Thirty-third street, 100 feet in width, and which other parcel of land does not belong to the said Susanna Root, but to George Root, who was proved before the jury to have become owner thereof before the original report was filed.

4. Because the supplemental report of the jury is an attempt to absorb or set-off the $7000 which their original report finds to be the value of the land taken, by an assessment of an equivalent amount on the land lying on the east side of Thirty-third street, formerly of the said Susanna Root, and now of the said George Root, and such assessment is forbidden by the Act of 13th January 1871.

7. Because the failure to award the claimant any damages for her land taken, which was proved to be worth $3000 per acre and upwards, is a violation of the spirit and intent of the Act of June 13th 1871, which was designed to put all owners of land upon the same footing, and if the power to assess on land lying outside be taken away by the legislature, it should not be done directly, as attempted in the first report, or indirectly, as attempted in this supplemental report.

July 6th 1872. The exceptions were dismissed and the report confirmed.

Mrs. Root removed the record to the Supreme Court and assigned for error the dismissing the exceptions and confirming the report of the viewers.

*H. S. Hagert* and *J. B. Townsend,* for Root, examined the

[Susanna Root's Case.]

Acts of Assembly above mentioned and cited : Dwarris on Statutes 381; Hammett *v*. Philadelphia, 15 P. F. Smith 146; Washington Avenue, 19 Id. 352.

*C. Yerkes* (with whom was *C. H. Jones*), contrà.—The damages are the actual injury which the owner has sustained : Schuylkill Nav. Co. *v*. Thoburn, 7 S. & R. 411; Schuylkill Nav. Co. *v*. Farr, 4 W. & S. 375; Furman Street, 17 Wend. 649; Harvey *v*. Lackawanna & B. Railroad, 11 Wright 435; Railroad Co. *v*. Heister, 8 Barr 450; Miflin *v*. Railroad Co., 4 Harris 192; Mc-Masters *v*. Commonwealth, 3 Watts 296.

Chief Justice AGNEW delivered the opinion of the court, January 11th 1875.

In Washington Avenue, 19 P. F. Smith 362-3, it is shown that the right of private property is clearly protected by the Bill of Rights. While the power of just taxation is unbounded, yet that of eminent domain is expressly limited by the right of the owner of the property to a just compensation. It follows that the right of compensation is not to be frittered away by a mere inference or by unfriendly interpretation. Compensation is not necessarily to be in money, and may be awarded in particular benefits received by the owner. But it is equally well settled that those general benefits, in which all others participate equally with the owner, are not just compensation. The question in this case is the proper interpretation of the Act of June 15th 1871, entitled "An act relating to the assessment of damages for the appropriation of land for public use." The interpretation must be made in view of the principles just stated as to the constitutional right of compensation.

By the first section of the Park Act of 26th March 1867, the title and ownership of the lands taken for the park are expressly vested in the city of Philadelphia, and compensation was provided for in the 3d section. Under this law and its supplements compensation was made in benefits; a rule properly applied to cases where the owner, as in the case of highways, retained his property subject to the public easement. But when, as here, the title of the owner was extinguished and transferred to the public, justice seemed to require a different rule, and this the Act of 1871 supplied. Hence, the act declared that "it shall not be lawful to assess, apportion, or charge the whole or any portion of the damage done to, or the value of the land so appropriated, to among or against the other property adjoining, or in the vicinity of the land so appropriated, nor the owners thereof; and all acts, or parts of acts, inconsistent herewith are hereby repealed."

It is to be noticed first, that this law is general and applies to all cases except appropriations of land for roads, streets and highways. It makes no exceptions of citizens of any class or in any

[Susanna Root's Case.]

circumstances—all alike are entitled to its benefits. Then its language is the *whole* or on any *portion* of the *damages* done to, or *value* of the land so appropriated. It therefore applies as well to damages as to value. Then neither damage nor value is to be assessed, apportioned or *charged to, among.* or *against* the other property *adjoining,* or in the vicinity of the appropriated land. In no form whatever, therefore, shall the adjoining land contribute to pay the damages or the value of the land taken. It is not to be by assessment, apportionment or charge, and it is not to be to, among or against it. Neither adjoining property nor land in the vicinity shall contribute. What more? "Nor the *owners* thereof." Then neither the land adjoining nor the *owners* of such land shall bear the burthen of the damage in the value of the appropriated land. There is no exception to this. The act does not say, except where the owner of the adjoining land is also the owner of the land taken. To crown all, there shall be no inferential exception, for it is said, "and all acts, or parts of acts, inconsistent herewith are hereby repealed." Hence, all those laws which before had allowed damage or value to be extinguished by benefits are gone as to these adjoining lands; for these charge the owner with the benefits his retained land has received, and this is flatly inconsistent with the provision that the adjoining lands and their owners shall not be assessed, apportioned or charged with contribution. There can be no inference, therefore, from these repealed laws, that lands outside, or the owners of outside lands, shall pay the damages done to, or the value of the appropriated inside land.

Then how does the case stand? Mrs. Root's land inside is wholly taken—it is gone entirely from her. She has, and can have, no benefits arising from it. The benefits, therefore, necessarily are such as belong to the outside land. It is a portion of the value of the outside land which is made to satisfy and pay the entire value of the land taken. As the owner of the outside land therefore she is compelled to submit to an assessment against her outside land to extinguish the compensation for her inside land. What is this but to set-off the outside value against the inside value. This being the undeniable fact, it is in the very teeth of the statute, which says it shall not be lawful to assess, apportion or charge the whole or any portion of the damage done to, or the value of the land so appropriated to, among or against the other property adjoining, or in the vicinity of the land appropriated, nor the owners thereof, and all acts and parts of acts inconsistent herewith are hereby repealed.

What has been said shows that the answer made that she is the owner of the land appropriated, and of the adjoining land also, and that value of the latter is increased by the park improvement, is without force, for she is not the subject of an exception in the law,

[Susanna Root's Case.]

and no exception can be made by judicial inference. It is also contrary to justice as well as the letter and intent of the act. As an owner of adjoining lands she partakes of no special benefits, that all the owners of adjoining land or lands in the vicinity do not share in. They derive precisely the same benefits in the rise of property in value that she obtains. If her outside land belonged to another its rise in value would be precisely the same, and yet would not be liable to contribute to pay her compensation for the land appropriated. Is it not evident that getting nothing from the inside land, her entire compensation has been taken out of her adjoining land? and that the rise in value of her adjoining land is as much protected by the act as the rise in value of any other person's adjoining land? This is the very thing forbidden by the act. How then does the accident that the two portions were formerly one, change her position, and make her liable as an owner, when other owners are exempt, and the act makes no exception, and allows of none by a repeal of the laws which would have allowed it? Nothing short of a judicial law can accomplish such a result, and this merely because as outside owner she is benefited precisely as all other outside owners are by the rise of adjoining lands in value. It is simply discrimination in face of the letter and purpose of the act, which is founded on the just principle that when the property is taken wholly, it is not to be paid for out of those common benefits which all alike enjoy in similar circumstances.

We think the court below was misled by the state of the law previous to the passage of the Act of 1871, and had not noticed the effect of the repealing clause in the last line, which prevents a judicial exception founded upon them.

> The decree of the Court of Quarter Sessions of the Peace, dismissing the exceptions and confirming the report, is reversed, and the report of the jury is set aside upon the third, fourth and seventh exceptions, and it is ordered, that a new view and appraisement be awarded; and the record is directed to be remitted to the new Court of Common Pleas, sitting as a Court of Quarter Sessions, there to be proceeded in and finally determined according to law.

Mr. Justice MERCUR dissented.