## Servedia v. Lawrence County

*Cobau & Berry,* for plaintiff.
*William McElwee, Jr.,* for defendant.

BRAHAM, P. J., May 5, 1943.—In this issue, framed upon an appeal from an award of viewers, plaintiff seeks to recover damages occasioned by the relocation of a section of State highway, which had previously passed along the east side of his 62-acre farm, so that the relocated highway ran between his house and barn, cutting off a parcel of four acres, including the barn, from the remainder. The jury having returned a verdict in favor of the plaintiff in the sum of $2,317.66, the defendant has made a motion for a new trial.

The principal question raised by this motion can best be stated by quoting the portion of the court's charge to which exception is taken. It is as follows:

"There is one thing here that you must keep in mind: As against the direct loss caused to the plaintiff by the actual taking of his land, he is not to be charged with the general increase in value of property which accrues not only to him but to all of his neighbors and to the public in general. I shall read some recent language from the Supreme Court on that:

" 'While advantages, as well as disadvantages, are to be considered in eminent domain cases, we said in *Pittsburgh, etc., Ry. Co. v. McCloskey,* 110 Pa. 436, 442 . . . "The general increase of values, resulting from the growth of public improvements, railroads, canals and highways, accrues to the public benefit, and in the computation of damages, the landowner cannot be charged therewith. The question, in each case, is whether or not the special facilities afforded by the improvement have advanced the market value of the property, beyond the mere general appreciation of property in the neighborhood." ' "

The quotation is from the opinion written by Mr. Justice Parker in Johnson's Petition, 344 Pa. 5, 9.

The criticism of these instructions is based upon an interpretation of a portion of the Act of June 21, 1937, P. L. 1951, amending the State Highway Department Act of May 31, 1911, P. L. 468, 36 PS §171. This act, after reciting the manner in which an agreement as to the damages caused by the construction, reconstruction, or improvement of a State highway may be arrived at between the county commissioners and the property owner, provides for the determination of the amount of damages, where no agreement is possible, in this language:

". . . the owner or owners of said property damaged thereby or the commissioners of the proper county may present their petition to the court of quarter sessions for the appointment of viewers to ascertain and assess such damages, as well as any benefits. The proceedings upon said petition and by the viewers shall be governed by existing laws relating to the ascertainment and assessment of damages, as well as any benefits, for opening public highways."

The language "as well as any benefits" was added by the amendment of June 21, 1937, P. L. 1951.

Defendant contends that the legislature intended, by adopting this amendment, to provide for a set-off as against actual damage suffered, of all benefits, both those special to the property damaged and those common to it and to all properties in the neighborhood, whether abutting on the highway or not.

This interesting and important question is a problem in statutory construction. It may be approached in three ways: First, by way of established precedent; second, by applying the ordinary rules of statutory construction; third, by examining the public policy involved.

As for precedents, the case cited by the trial judge, Johnson's Petition, 344 Pa. 5, is the last interpretation

of this portion of the State Highway Department Act by the Supreme Court. The decision was handed down on January 26, 1942, five years after the adoption of the amendment of 1937. The precise question now before the court does not, however, seem to have been raised in Johnson's Appeal nor its decision to have been necessary; accordingly it is not wise to rest too heavily upon this one precedent.

Before the passage of the amendment it was well settled in Pennsylvania law that only special and not general damages might be set off against actual damage caused by the taking of property for public purposes: Henry v. County of Somerset, 105 Pa. Superior Ct. 441; Achenbach v. Slate Belt Telephone & Telegraph Co., 73 Pa. Superior Ct. 568; annotation, L. R. A. 1918A 884, 888. This is in accord with the great weight of authority everywhere, as appears from the following:

"It was formerly held in some of the states that all benefits, both general and special, could be set off from the compensation for the land actually taken as well as from the damages to the remaining land, and that the only question to be determined in each case is how much less is the whole property worth by reason of the taking. But this rule has been generally abandoned, as it is not considered just to charge the owners whose land is taken for a benefit which all other landowners receive without payment. Furthermore, the general benefit in such cases arises from the use for which the improvement was constructed and which warranted the inclusion of its cost in the general tax levy, in the payment of which the owners whose land was taken participated. Even where benefits may be deducted from the damages claimed, it is therefore the rule that only special benefits may be considered": 18 Am. Jur. 944.

"By the weight of authority, the benefits which may be deducted are those which are special or peculiar to the tract taken, and general benefits resulting to the

owner in common with the public cannot be set off":
29 C. J. S. 1064.

See also annotations, 49 A. L. R. 697, 703, 124 A. L. R.
407, 422, 68 A. L. R. 784.

The application of recognized principles of statutory
construction indicates that it was not the intention of
the legislature, when, by the amendment of 1937, it
inserted the language "any benefits" into the State
Highway Department Act of 1911, to allow a set-off of
general benefits against actual loss. To begin with, sec-
tion 58 of the Statutory Construction Act of May 28,
1937, P. L. 1019, 46 PS §558, provides: "All provisions
of a law of the classes hereafter enumerated shall be
strictly construed: . . . (4) Provisions conferring the
power of eminent domain". The amendment of 1937,
assuming the contention of the defendant, extended the
power of eminent domain to the disadvantage of the
taxpayer; it must be strictly construed.

The vice of defendant's contention consists in the
assumption that a legislative intent to allow general
benefits must necessarily be found from the inclu-
sion of the words "any benefits" in the amendment.
This leaves out of account the very respectable body of
authority allowing no deduction for benefits in emi-
nent domain cases: State v. Reid et al. (Ind.), 185
N. E. 449, 86 A. L. R. 1442; 18 Am. Jur. 940, §297,
and 946, §301. At the time of the adoption of the
amendment of 1937 the general statute relating to
eminent domain allowed witnesses, in arriving at an
estimate of damage, "to add to their opinion of the
market value before such exercise the cost or value of
all the elements of benefit or advantage": Act of April
21, 1915, P. L. 159, 26 PS §101. There was a similar
provision as to counties in the Act of May 2, 1929, P. L.
1278, art. VII, secs. 523 and 527, 16 PS §523 and §527.
The General Road Act of June 13, 1836, P. L. 551, sec.
9, 36 PS §1834, provided for a consideration of "ad-
vantages" in assessing the damages caused by opening
the road.

In view of this state of the law it is clear that, when the legislature adopted the amendment of 1937, it was merely making certain that special benefits were to be assessed and that proceedings under the State Highway Department Act were not of a type where no benefits at all were to be considered.

The amendment of 1937 provided: "The proceedings upon said petition [for viewers] and by the viewers shall be governed by existing laws relating to the ascertainment and assessment of damages, as well as any benefits, for opening public highways". This relates to the General Road Act of 1836, above cited. The amendment of 1937 merely clarified the meaning of the Act of 1911, as previously amended, by making sure that not only the question of damages was to be tried according to the General Road Act of 1836 but also the matter of benefits.

All this legislation had been construed by the Supreme Court prior to 1937 to mean that "benefits", at least so far as a highway in the open country was concerned, meant special and not general benefits. Note how much more explicit is the language of the Act of April 21, 1915, P. L. 159, on the subject of benefits in eminent domain than is the language now before us. Yet the Supreme Court has steadfastly ruled that special rather than general benefits are to be considered. Section 52(4) of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §552, provides:

"In ascertaining the intention of the Legislature in the enactment of a law, the courts may be guided by the following presumptions among others: . . . (4) That when a court of last resort has construed the language used in a law, the Legislature in subsequent laws on the same subject matter intend the same construction to be placed upon such language".

When, at least since 1911, the word "benefits" as applied to eminent domain proceedings concerning a

State highway has been construed to mean special benefits we conclude the legislature so meant the word in 1937.

Defendant contends that the legislature intended to provide for assessment of benefits on State highways in country districts in the same manner as benefits are assessed in cities. The argument assumes as the ideal situation a parity of burden in city and in country. In considering this contention the constitutional prohibition against taking property for public purposes must be kept in mind. "Compensation is not necessarily to be in money, and may be awarded in particular benefits received by the owner. But it is equally well settled that those general benefits, in which all others participate equally with the owner, are not just compensation": Agnew, C. J., in Root's Case, 77 Pa. 276, 279.

There are essential differences between the benefits accruing to the owner of a city lot by the opening of a street in front of his property and to the owner of a farm across whose land a State highway is built. In a city the streets are capillaries, in the country the State highways are arteries. In a city there are so many streets that one more or less may not mean much except to the abutting owners; in a farm community the State highway means new life to an entire community and new value to all property.

This distinction is recognized by the law. The foot front rule is recognized as an appropriate method of improving a street in a city but it "cannot have any application to farm lands or rural property, although the same be situated within the city limits": Keith et al. v. City of Philadelphia, 126 Pa. 575, 581. At least, the surroundings must be urban: City of McKeesport v. Soles, 178 Pa. 363. The same rule applies to sewers; the property must be classed as "urban" or "rural": Philadelphia, to use, v. Brady, 308 Pa. 135.

Nor is the measure of damage claimed by defendant appropriate if a street in a city is improved and the benefits and damages are assessed in a viewers' proceeding. The true rule in such case is stated in Gaughan v. Scranton City, 266 Pa. 586, 590:

"The true rule in such case is that the municipality is entitled to the benefits special to abutting property and no less so because all other properties along the line of the improvement may be similarly situated . . . The abutting owner, however, is not to be charged with any general indefinite appreciation of the value of property in the neighborhood, as distinguished from special benefits to his and other abutting properties, resulting from the improvement: Rudderow, Trustee, v. Philadelphia, 166 Pa. 241; Dawson v. Pittsburgh, 159 Pa. 317; Greenawalt v. West Newton Boro., 64 Pa. Superior Ct. 576; and see note to Peoria B. & C. T. Co. v. Vance, 9 L. R. A. (N.S.) 807."

Absolute equality between city and country cannot be secured because the situations are different; but the only fundamental distinction is that in a city there may be assessment for the cost of a street upon the foot front rule and even this is limited to nonrural property. Hence, the argument for allowing "benefits" as a set-off in the country with like effect as in the city falls of its own weight.

Two other reasons for a new trial are advanced. The first relates to the introduction of certain photographs in evidence. They were taken a short time before trial during a time of high water. There was evidence that plaintiff's property was somewhat damaged by the collection of water and casting of it upon plaintiff's property. The jury was specially cautioned about the photographs and directed to make allowance for the abnormal conditions and we believe no harm has resulted.

The second additional reason relates to the cross-examination of certain expert witnesses of plaintiff in

order to show their previous employment by the defendant as expert witnesses. This was entirely proper: Baymond v. Sternberger, 116 Pa. Superior Ct. 451, 454; Henry on Trial Evidence (3rd ed.) 743.

The excessiveness of the verdict is not assigned as a reason for a new trial. The verdict was in the sum of $2,000, with damages for detention, amounting in all to $2,317.66. Several of defendant's witnesses placed the damage at $1,000, but one witness, Thomas West, a very well-known and reputable resident of the neighborhood, put plaintiff's damage at $1,700 to $1,800. Thus there is neither allegation nor any showing of an excessive verdict. In such case the rule of Culver v. Commonwealth, 346 Pa. 262, applies and these minor points raised in support of the motion for a new trial are not of much consequence.

Entertaining these views we make the following

## Order

Now, May 5, 1943, defendant's motion for a new trial is overruled and refused and the prothonotary is directed to enter judgment on the verdict upon payment of the jury fee.